COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| REEVES COUNTY, TEXAS AND ARNULFO GOMEZ, INDIVIDUALLY AND AS SHERIFF OF REEVES COUNTY, | § § § § | No. 08-09-00256-CV

Appeal from the

143rd District Court |
| Appellants, | § | |
| v. | § | of Reeves County, Texas |
| HOUSTON CASUALTY COMPANY, | § § | (TC# 09-09-19461-CVR) |
| Appellee. | | |

**O P I N I O N**

This is an appeal from a summary judgment rendered in favor of Houston Casualty Company ("Houston Casualty") in a declaratory action that Houston Casualty had a duty to defend and indemnify Reeves County and Sheriff Gomez under a non-profit organization liability policy. On appeal, Reeves County and Sheriff Gomez argue that the court erred in granting Houston Casualty's motion for summary judgment, and in denying their motion for partial summary judgment.

In Issue One, Reeves County and Sheriff Gomez contend the trial court erred in granting Houston Casualty's motion for summary judgment. In Issue Two, Reeves County and Sheriff Gomez contend the trial court erred in denying their motion for partial summary judgment.

In 2001, Mr. Pascual Olibas brought action against Reeves County and Sheriff Gomez in the United States District Court for the Western District of Texas ("2001 suit"). In this suit, Mr. Olibas alleged the defendants "violated [his] civil rights by interfering with his ability to

operate as a bail bondsman in Reeves County in retaliation for [his] exercising certain constitutionally protected rights, including his right to freedom of speech and to seek redress of grievances under the First Amendment." This suit was settled in 2002, and the insurance carriers who provided a defense to Sheriff Gomez and Reeves County were named as third-party beneficiaries.

In December 2004, Houston Casualty issued a non-profit organization liability policy naming Reeves County as insured ("the Policy"). This "claims-made" policy covered certain types of claims "first made" against the insured between the policy period of December 1, 2004 and December 2005. In 2005, Mr. and Mrs. Olibas brought action against Reeves County and Sheriff Gomez in the United States District Court for the Western District of Texas ("2005 suit"). Thereafter, Reeves County and Sheriff Gomez offered the Olibases' complaint in the 2005 suit to Houston Casualty, and requested insurance defense and indemnity under the Policy. However, Houston Casualty refused to provide coverage for this claim.

In May 2007, Reeves County and Sheriff Gomez filed the instant action, and requested a declaration from the trial court that Houston Casualty and Lexington Insurance Company owed them a defense and indemnity under their insurance policies. In October 2007, Reeves County and Sheriff Gomez filed a motion for partial summary judgment on their claims for defense and indemnity, and Houston Casualty filed a motion for summary judgment on the plaintiffs' claims for defense and indemnity. Reeves County and Sheriff Gomez then filed objections to Houston Casualty's summary judgment evidence on the basis of the "eight corners" rule, specifically as to Mr. Olibas's complaint in the 2001 suit, the settlement agreement between Mr. Olibas and the Appellants in 2002, and a portion of attached Exhibit E, which included Reeves County's

application for the Houston Casualty policy at issue in this suit, as well as Reeves County's financial statement and independent auditor's report from December 31, 2003. In its September 1, 2009 order, the trial court granted Houston Casualty's motion for summary judgment, denied Reeves County and Sheriff Gomez's motion for partial summary judgment, and overruled the Appellants' objections to Houston Casualty's summary judgment evidence. Reeves County and Sheriff Gomez then filed its notice of appeal to appeal the trial court's order.

When both sides move for summary judgment, and the trial court grants one motion and denies the other, the reviewing court considers both sides' summary judgment evidence and determines all issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The reviewing court must consider all the grounds presented in both motions, and render the judgment the trial court should have rendered. *Id*. The cross-motions in this case presented traditional grounds for summary judgment. *See* TEX.R.CIV.P. 166a(c). An appellate court reviews summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

The standards for reviewing traditional summary judgments are well established. In a traditional summary judgment proceeding, the standard of review on appeal asks whether the successful movant carried the burden to show that there is no genuine issue of material fact, and that the judgment was properly granted as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Fertic v. Spencer*, 247 S.W.3d 242, 248 (Tex.App.--El Paso 2007, pet. denied). Thus, the question before the reviewing court is limited to whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more elements of the underlying claim. *See Fertic*, 247 S.W.3d at 248. To resolve this question, the reviewing court will take all

evidence favorable to the nonmovant as true; and all reasonable inferences, including any doubts, must be resolved in the nonmovant's favor. *Id.*, *citing Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

Because the trial court's order did not specify the ground(s) on which Houston Casualty's summary judgment was granted, and because there were multiple grounds on which summary judgment may have been granted in the instant case, Reeves County and Sheriff Gomez are required to negate all grounds on appeal. *See Star-Telegram, Inc., v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993); *Lewis v. Adams*, 979 S.W.2d 831, 833 (Tex.App.--Houston [14th Dist.] 1998, no pet.)(holding that summary judgment must be affirmed where multiple grounds are asserted and the appellant does not attack all grounds on appeal); *Evans v. First Nat'l Bank of Bellville*, 946 S.W.2d 367, 377 (Tex.App.--Houston [14th Dist.] 1997, writ denied). If an appellant fails to negate each ground upon which the judgment may have been granted, the appellate court must uphold the summary judgment. *See Star-Telegram, Inc.*, 915 S.W.2d at 474; *State Farm Fire & Cas. Co.*, 858 S.W.2d at 381; *Lewis*, 979 S.W.2d at 833; *Evans*, 946 S.W.2d at 377.

In Issue One, Reeves County and Sheriff Gomez argue the trial court erred in granting Houston Casualty's motion for summary judgment as to their claims that it had a duty to defend and a duty to indemnify. Houston Casualty responds by arguing that the trial court was correct in concluding that it did not owe duties to defend or indemnify Reeves County or Sheriff Gomez. In Issue Two, Reeves County and Sheriff Gomez challenge the trial court's denial of their motion for partial summary judgment by arguing that because Houston Casualty had a duty to defend and indemnify them as a matter of law, the court erred in denying their motion for summary

judgment. We will address the duty to defend arguments first.

Both parties moved for summary judgment on the duty to defend. Houston Casualty argued the Olibases' complaint in the 2005 suit failed to allege a covered claim that would trigger its duty to defend or indemnify Reeves County or Sheriff Gomez. Specifically, Houston Casualty contended (1) the 2005 suit resulted from a dispute involving the operation of the Reeves County jail, and did not occur during the policy period, but arose in 2001, and were "mere continuations of the 2001 Litigation, a lawsuit that was settled, albeit unsuccessfully," and (2) the Policy did not cover the operation or activities of any jail or detention facility. In the motion of Reeves County and Sheriff Gomez, they argued they were entitled to coverage because (1) a reasonable interpretation of the facts as pleaded by the Olibases negate application of the "jail operations" exclusion, and (2) a reasonable interpretation of the facts as pleaded by the Olibases negate application of the "prior litigation" exclusion.

On appeal, Reeves County and Sheriff Gomez first argue that Houston Casualty's duty to defend was triggered because the insurance coverage was a "claims-made policy," rather than an occurrence coverage, and the Olibases made their "claim" within the policy coverage period.[1] Therefore, they argue, Houston Casualty wrongly contended at trial that it was relieved of its duty because some of the acts the Olibases alleged in the 2005 suit occurred prior to the policy's effective date.

Whether a duty to defend exists is a question of law, reviewed *de novo*. *KLN Steel Prod. Co., Ltd. v. CNA Ins. Co.*, 278 S.W.3d 429, 434 (Tex.App.--San Antonio 2008, pet. denied). The

---

[1] There is no dispute between the parties that the Policy in this case was a "claims-made" policy in that its express terms cover "claims . . . first made" against Reeves County and Sheriff Gomez during the policy period from December 1, 2004 to December 1, 2005.

insured bears the initial burden to establish that its claim falls within the scope of coverage provided by the policy. *CNA Ins. Co.*, 278 S.W.3d at 434. Should the insured establish a right to coverage, the burden then shifts to the insurer to demonstrate that the claim is subject to a policy exclusion. *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex.App.-- Fort Worth 2003, pet. denied). If the insurer is able to establish that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within the terms of the policy. *Id*.

Reeves County and Sheriff Gomez contend Houston Casualty failed to carry its burden to prove that the "interrelated acts" exclusion renders Olibases' 2001 suit and the Olibases' 2005 suit the same "claim." However, Houston Casualty argues the "interrelated acts" provision was not an exclusion, but constituted "other conditions and agreements," and as such, Reeves County and Sheriff Gomez bore the initial burden to establish that a claim was first made during the policy period, and not at an earlier time under the "interrelated acts" provision. We agree with Houston Casualty. This provision was listed apart from the fourteen exclusions as set forth under Section V of the Policy; instead, it was listed under Section VII, entitled "Other Conditions and Agreements." Therefore, it was not an exclusion, and so Reeves County and Sheriff Gomez bore the initial burden to show their claim falls within the scope of coverage provided by the Policy. *See CNA Ins. Co.*, 278 S.W.3d at 434.

Reeves County and Sheriff Gomez argue that the pleadings do not support Houston Casualty's summary judgment arguments. They claim that construing the 2005 complaint in favor of coverage, the Olibases did not plead any wrongful act so interrelated with any act Pasqual Olibas alleged in the 2001 suit that it should be considered a single claim, and that to do

so would be nonsensical because the Olibases settled all of their claims related to any conduct Pasqual Olibas alleged in the 2001 suit. They argue that all the "wrongful acts" pleaded in the 2005 suit occurred after the 2001 suit was settled in 2002. Houston Casualty, on the other hand, claims that contrary to the Appellants' argument, nothing in the language of the "interrelated acts" provision in the Policy required the alleged harm be identical.

Furthermore, Reeves County and Sheriff Gomez contend that although no Texas authority has interpreted the "interrelated acts" provision, other jurisdictions have interpreted similar exclusions contrary to Houston Casualty's interpretation. Reeves County and Sheriff Gomez rely on *Axis Surplus Ins. Co. v. Johnson*, 2008 WL 4525409, No. 06-CV-500-GKF-PJC, *9-10 (N.D. Okla. Oct. 3, 2008) and *Ace American Ins. Co. v. Ascend One Corp.*, 570 F.Supp.2d 789, 800-01 (D.Md. 2008) cases from other jurisdictions, in advancing their argument that the "interrelated acts" provision would be inapplicable in this case. Houston Casualty argues that the two foregoing cases are distinguishable from the instant case, and are not controlling. Moreover, Houston Casualty relies on *KB Home v. St. Paul Mercury Ins. Co.*, 621 F.Supp.2d 1271, 1272 (S.D. Fla. 2008) and *Informix Corp. v. Lloyd's of London*, 1992 WL 469802, No. C-91-1506-FMS, at *3 (N.D. Cal. Oct. 15, 1992) in arguing that although no definition of "interrelated wrongful acts" exist in the Policy, those cases illustrate that a common definition of this term is "[all wrongful acts] that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." In their reply brief, Reeves County and Sheriff Gomez argue that when Houston Casualty interpreted the Policy's "interrelated acts" language in its brief, it relied on authorities that involved policies which included a definition of "interrelated acts," whereas the Policy at

dispute in this case did not incorporate such a definition, and as such, "Houston Casualty . . . cannot rely on language it did not include in its own policy simply because other policies commonly include it."

Insurance policies are interpreted according to the general rules of contract construction. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The primary concern in interpreting a contract is to determine the true intent of the parties. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). When a policy permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992). When the term to be construed is unambiguous, we will construe the language according to the plain meaning of the words. *Archon Investments, Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 338 (Tex.App.--Houston [1st Dist.] 2005, pet. denied). The Texas Supreme Court has held that in construing the terms of an insurance contract, courts "must read all parts of a contract together." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). "Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Id*.

Generally, the duty to defend is dependant on the type and scope of coverage provided by the policy agreement. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). An insurer's duty to defend is determined according to the "eight corners," or "complaint allegations" rule. *See King*, 85 S.W.3d at 187; *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). The insurer's duty to defend is determined entirely by the allegations in the pleadings and the language of the insurance policy. *King*, 85 S.W.3d at 187. All that is

needed to invoke the duty are factual allegations which support a claim potentially covered by the policy. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). Any doubt that the facts alleged give rise to the duty are resolved in favor of the insured. *See National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Facts outside the pleadings, regardless of how easily they can be found or validated, are not ordinarily considered. *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308; *see also Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex. 1973)("The duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts. It depends only on what the facts are alleged to be.").

When applying the eight-corners rule, a reviewing court interprets the allegations in the petition liberally, and resolves any doubts in favor of the duty to defend. *KLN Steel Prod. Co., Ltd.*, 278 S.W.3d at 435. The insured need only show that a reasonable reading of the allegations would allow evidence of a claim that is covered by the policy, not that the claim itself be clearly demonstrated by the language of the pleadings. *KLN Steel Prod. Co., Ltd.*, 278 S.W.3d at 435. In addition, the reviewing court must read the underlying petitions in light of the insurance policy's provisions, and focus the analysis on the "origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins., Co.*, 939 S.W.2d at 141; *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.--Houston [14th Dist.] 1993, writ denied)("It is not the cause of action alleged which determines coverage but the facts giving rise to the alleged actionable conduct.").

In the present case, Section I of the Policy states:

The Company shall pay on behalf of the INSURED all LOSS and DEFENSE

COSTS that the INSURED becomes legally obligated to pay solely because of a CLAIM first made against the INSURED during the POLICY PERIOD, or the Extended Reporting Period if in effect, for a WRONGFUL ACT committed or allegedly committed by the INSURED.

Section VII concerning the Policy's other conditions and agreements state under "Interrelated Acts":

A CLAIM or CLAIMS by one or more claimants made against one or more INSUREDS which arise out of the same WRONGFUL ACT or interrelated WRONGFUL ACTS shall be deemed to be a single CLAIM and shall be deemed to have been made when the first of such CLAIMS is made. Any interrelated WRONGFUL ACTS shall be deemed to have been committed when the first of any such WRONGFUL ACTS was committed.

"Wrongful act" is defined under the Policy as:

[A]ny error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted, by any INSURED, individually or otherwise, in an INSURED capacity, including WRONGFUL EMPLOYMENT PRACTICES, PERSONAL INJURY or THIRD PARTY DISCRIMINATION.

Our review of the record shows that the Policy did not define the term "interrelated wrongful acts." Moreover, the Policy itself did not indicate that any particular definition, or a limited or restricted definition, should be used to replace the plain, ordinary, and generally accepted meaning of "interrelated." No Texas appellate court, or the Fifth Circuit, has interpreted the term "interrelated wrongful act."[2] However, Texas courts have had occasion to interpret the term "related" in an insurance policy. *See, e.g., Columbia Cas. Co. v. CP Nat., Inc.*, 175 S.W.3d 339, 347 (Tex.App.--Houston [1st Dist.] 2004, no pet.). In *Columbia Cas. Co.*, our sister court gave the term "related" its ordinary and generally accepted meaning. *Id*. at 348. Citing the Merriam-Webster's Collegiate Dictionary, that court concluded that "related" meant

---

[2] Houston Casualty concedes this in its brief.

"having a logical or causal connection." *Id*. at 348. As such, we will construe "interrelated" according to its ordinary meaning.

Before discussing the specific facts of this case, we must first address Reeves County and Sheriff Gomez's argument that the trial court erred in overruling their objection that Mr. Olibas's original complaint from the 2001 suit constituted inadmissible extrinsic evidence under the "eight corners" rule. They argue that even if the trial court improperly considered extrinsic evidence, such evidence did not support summary judgment in Houston Casualty's favor. Houston Casualty claims the complaint in the 2001 suit was relevant only to coverage issues, and neither touched upon the merits of the 2005 suit regarding the Appellants' liability, nor contradicted any allegations made in the 2005 suit.

The Texas Supreme Court has never recognized an exception to the strict eight-corners rule so as to allow courts to examine extrinsic evidence in determining an insurer's duty to defend. *See Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497-98 (Tex. 2008); *GuideOne Elite Insurance Co.*, 197 S.W.3d 308-09. Houston Casualty concedes this in its brief. However, Houston Casualty points out that regardless of whether the trial court considered the 2001 complaint, the complaint in the 2005 suit contained sufficient facts about the 2001 suit "to demonstrate the two suits allege interrelated wrongful acts."

In 2005, Pasqual Olibas and Cheryl Olibas, individually and d/b/a Freedom Bail Bonds, filed an action against Sheriff Gomez, Reeves County, General Star Management Company, and Summit Risk Services, Inc. The 2005 complaint alleged in part that:

> In 2001, in Cause No. EP-01-CA-0371-DB, Plaintiff Pascual Olibas sued Defendants Gomez and Reeves County, Government Defendants herein, in the United States District Court for the Western District of Texas, El Paso Division,

-11-

alleging that these Defendants had violated Plaintiff's civil rights by interfering with his ability to operate as a bail bondsman in Reeves County in retaliation for Plaintiff exercising certain constitutionally protected rights, including his right to freedom of speech and to seek redress of grievances under the First Amendment.

The 2005 complaint also alleged the parties settled the 2001 suit in 2002, and the insurance carriers who provided a defense to Sheriff Gomez and Reeves County were named as third-party beneficiaries. The settlement agreement stated that Mr. Olibas and his bail bond company would "be accorded all the rights and privileges accorded generally to bail bondsmen in Reeves County, Texas," and that all future Reeves County bail bond policies would be non-discriminatory in both content and application. The 2005 complaint alleged that "[n]otwithstanding the settlement of the federal lawsuit, [Mr. Olibas] continued to exercise constitutionally protected rights to the displeasure of [Sheriff Gomez]." The Olibases alleged that as a result of these actions, "relations between [Mr. Olibas and Sheriff Gomez] continued to deteriorate and . . . [Sheriff Gomez] continued to exercise his powers under color of law to retaliate against Plaintiffs." The Olibases alleged from May 3, 2002 to October 2003, Sheriff Gomez permitted B&M Bonding to write bail bonds, although he was aware that company was in default in bail bonds, and as such was prohibited from writing bail bonds. They alleged this was done so that B&M Bonding may continue to compete against the Olibases' business. The Olibases further complained that Sheriff Gomez favored Mr. Bill Weinacht's bail bond firm, A-Quick Out Bail Bonds, in various manners, such as by assisting this firm "in obtaining a large portion of the business of bail bonds written in release inmates from the Reeves County Jail, through means not wholly known to Plaintiffs but which Plaintiffs believe and therefore assert involved unequal, adverse treatment of Plaintiffs," and by "[steering] . . . clients to Weinacht's

bail bond firm and away from Plaintiffs' bail bond company." The Olibases asserted that this was in retaliation against their exercise of their constitutional rights. In 2003, the Olibases allegedly learned that the sheriff gave other bondsmen access to inmates at Reeves County jail, while denying this privilege to the Olibases. Despite their request for this access, Sheriff Gomez continued to deny it to them. The Olibases also referred to specific instances where Sheriff Gomez assisted Mr. Weinacht's bail bond company in obtaining bonds, or prevented detainees from obtaining bonds from the Olibases' company. The Olibases also alleged that Sheriff Gomez "sought to intimidate, harass, annoy, and impede" their employees and agents "in an effort to keep Plaintiffs from conducting business" in Reeves County. Finally, the Olibases complained that the sheriff required them to file a financial statement prepared by certified public accountants, whereas he did not require the same from their competitors.

Based on our review of the record, we conclude that the complaint in the 2005 suit alleged sufficient facts regarding the 2001 suit to establish the invocation of the "interrelated acts" provision.

In *Axis Surplus Ins. Co. v. Johnson*, a federal court held that two suits against insured corporate directors did not involve interrelated wrongful acts where the first suit was premised on the directors' failure to pay a loan to a third party, while the latter suit was based on the directors' mismanagement of the company's business. 2008 WL 4525409, at *9-10. The court indicated the mere fact that both suits "allege breaches of fiduciary duty and gross negligence do not provide the 'common nexus' required by the policy's definition of Interrelated Wrongful Acts." *Axis Surplus Ins. Co.*, 2008 WL 4525409, at *9.

In *Ace American Ins. Co. v. Ascend One Corp.*, a federal court concluded that an

interrelated wrongful acts exclusion did not apply where two claims lacked a sufficient "nexus" of facts, circumstances, events, or causes. 570 F.Supp.2d at 800-01. The *Ace American Ins. Co.* court distinguished the instant case from other cases in which courts found the interrelated wrongful acts provision to apply by reasoning that here, one claim was based on occurrences different in scope and time from the alleged wrongful acts in the second claim. *Id*. at 800. Moreover, the two claims differed in that one action was a private suit by individuals seeking monetary damages, and arose from the specific experiences of those individuals related to their enrollment in debt management plans, whereas the other claim was a governmental investigation into alleged violations of various Consumer Protection statutes, under which the government was able to seek injunctive relief, as well as civil and criminal penalties. *Id*. at 801. Finally, the scope of the governmental investigation was broader than the private action. *Id*. at 801.

Based on the facts alleged in the underlying suits, we agree with Houston Casualty that this is not a case where only a slight or attenuated connection existed between two sets of wrongful acts. *See, e.g., Axis Surplus Ins. Co.*, 2008 WL 4525409, at *9-10. Contrary to *Axis Surplus Ins. Co.*, the alleged wrongful acts were not separate and distinct in this case; the two suits both presented alleged facts as to Sheriff Gomez's retaliatory actions. *See id*. In contrast to *Ace American Ins. Co.*, both actions were private in this case, and involved the same parties and same or similar alleged wrongful actions taken by Sheriff Gomez. *See Ace American Ins. Co.*, 570 F.Supp.2d at 800-01. We conclude the wrongful acts that formed the basis of the 2005 suit were interrelated wrongful acts under the plain meaning of the Policy language, and as such, the claims as to the 2001 and 2005 suits constituted a single claim under the Policy. Based on the plain language of the Policy, because the 2005 suit involved an interrelated wrongful act with the

2001 suit, and any such act occurred prior to the commencement of the policy period, which was on December 1, 2004, any claims related to the 2005 suit were not covered under the Policy.

Reeves County and Sheriff Gomez argue Houston Casualty's interpretation of the "interrelated acts" provision contradicts the fundamental purpose of claims-made insurance policies. They argue that the application of the "interrelated acts" provision to this case would not limit, but instead expand the period that the insurer is exposed to potential liability. Houston Casualty claims that contrary to the Appellants' argument, the insurance policy period in this case was not elastic, and the "interrelated acts" provision simply ensured that only claims first made within that finite policy period were covered. Moreover, Houston Casualty contends that claims relating back to prior claims were not covered, and so there was no expansion of the coverage, as the Appellants had argued. We agree with Appellee. A reading of the plain language of the Policy indicates that the "interrelated acts" provision ensures that only claims first made within the policy period are covered, and any claims that trigger relation back to prior claims are not covered. As such, there is no expansion of coverage.

Because Reeves County and Sheriff Gomez have failed to satisfy their burden of establishing that the claims were first made during the policy period, and the claims in the 2005 suit were first made in 2001, no coverage exists as to the 2005 claims under the Policy. Having determined that Houston Casualty's motion for summary judgment as to the claim of duty to defend was properly granted on the basis that the company did not owe any duties to defend Reeves County and Sheriff Gomez under the "eight corners" rule, we need not address the other grounds raised in its motion as to this particular duty. As such, we overrule Issue One with respect to Houston Casualty's duty to defend claim.

-15-

Finally, Reeves County and Sheriff Gomez assert that the trial court erred in granting Houston Casualty's motion for summary judgment as to the claim of duty of indemnity.[3] *Citing Northfield Insurance Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 537 (5th Cir. 2004), the Appellants argue that Texas law considers the duty to indemnify question justiciable only after the underlying suit is concluded. Houston Casualty argue, in response, that the Texas Supreme Court has held that "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." [Emphasis in orig.]. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). However, a recent decision from the Texas Supreme Court has cautioned that "the holding in *Griffin* was fact-specific and cannot be construed so broadly." *D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). In contrast to a duty to defend, the facts actually established in the underlying suit control the duty to indemnify. *D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 744; *GuideOne Elite Ins. Co.*, 197 S.W.3d at 310. The Texas Supreme Court has noted:

> The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify. This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the evidence . . . .

*D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 744.

However, our review of the record does not reveal any evidence that establishes if and

---

[3] Houston Casualty raised this as their second issue in their brief.

when the 2005 suit was concluded. Moreover, if the pertinent summary judgment evidence considered by the trial court is not in the appellate record, we presume the omitted evidence supports the trial court's judgment. *See Enter. Leasing Co. Of Houston v. Barrios*, 156 S.W.3d 547, 550 (Tex. 2004)(per curiam). Therefore, we conclude the trial court did not err in granting Houston Casualty's motion for summary judgment as to the duty of indemnity, and we overrule Issue One with respect to this claim. Having concluded that the trial court properly granted Houston Casualty's motion for summary judgment as to the claims of duty to defend and duty to indemnify as a matter of law, we conclude that the court properly denied the Appellants' partial motion for summary judgment as to these claims. Accordingly, we overrule Issue Two.

Having overruled Reeves County and Sheriff Gomez's issues presented for review, we affirm the trial court's judgment.

September 14, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.