**Reversed and Remanded and Opinion filed July 16, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00118-CV

---

### GASTAR EXPLORATION LTD., Appellant

### V.

### U. S. SPECIALTY INSURANCE CO. AND AXIS INSURANCE CO., Appellees

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-11236**

---

## O P I N I O N

This case involves a dispute over insurance coverage for seven different lawsuits, which the parties label the Seven Gastar Suits. Appellant Gastar Exploration Ltd. was the named insured under two directors' and officers' liability insurance policies, one providing primary coverage and the other providing excess coverage. Appellee U.S. Specialty Insurance Company issued the primary policy,

and appellee AXIS Insurance Company issued the excess policy. Appellees (collectively "the insurers") each denied coverage for the Seven Gastar Suits, contending those suits were related to other litigation that was filed prior to the policy periods. Gastar then filed this suit. The insurers each moved for summary judgment, which the trial court granted. Because there is an ambiguity in the policies that must be resolved in Gastar's favor, we reverse and remand.

## BACKGROUND

### A.    The insurance policies

U.S. Specialty issued a primary directors' and officers' liability insurance policy to Gastar for a "Policy Period" beginning November 1, 2008 and ending November 1, 2009. AXIS issued an excess directors' and officers' liability insurance policy to Gastar for the same period. The AXIS excess policy follows the form of U.S. Specialty's primary policy and as a result, there are no relevant differences between the two policies.[1]

The two policies are claims-made insurance policies. As claims-made policies, the policies only apply to claims first made during the Policy Period: November 1, 2008 to November 1, 2009. The relevant policy provisions include:

**INSURING AGREEMENTS**

. . .

(B)    The Insurer will pay to or on behalf of the **Company** [Gastar] **Loss** arising from:

. . .

---

[1] While U.S. Specialty and AXIS filed separate motions for summary judgment in the trial court, each motion asserted they were entitled to summary judgment on the same grounds. On appeal, the insurers filed a joint brief and treat the two policies as identical for all purposes relevant to this appeal. Appellant agrees there are no relevant differences between the two policies. Accordingly, we treat the two policies as identical and will not separately address the AXIS excess policy.

          (2)    **Securities Claims** first made during the **Policy Period** . . . against the **Company** for **Wrongful Acts**.

## DEFINITIONS

. . .

(B) **Claim** means:

          (1)    any written demand for monetary or non-monetary relief;

          (2)    any civil proceeding commenced by service of a complaint or similar pleading,

. . .

(L)    **Policy Period** means the period [that begins at 12:01 a.m. on November 1, 2008 and ends at 12:01 a.m. on November 1, 2009], subject to prior termination or cancellation . . . .

. . .

## EXCLUSIONS

Unless otherwise specifically stated or provided for in Condition (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

. . .

(I)    [Replaced by Endorsement 10, which states]:

### PRIOR & PENDING LITIGATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that EXCLUSIONS (I) is deleted and replaced with the following:

          (1)    arising out of, based upon or attributable to any pending or prior litigation as of 5/31/2000, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

All other terms, conditions and limitations of this Policy will remain unchanged, including but not limited to the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations.

. . .

**CONDITIONS**

. . .

(C)  **Interrelationship of Claims**

All **Claims**, alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.

. . .

(L)  **Titles and Headings**

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit or expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

. . .

**B.     The claims against Gastar**

In 2006, Gastar was first named as a defendant in one of the numerous lawsuits arising out of a fraudulent investment scheme that eventually became known as the Mare Lease Program. The plaintiffs in these lawsuits alleged they were defrauded in a scheme involving investment in thoroughbred breeding mare leases. Generally, the plaintiffs alleged the investment scheme: (1) offered tax-advantaged leases of thoroughbred mares; (2) promised attractive, even guaranteed, rates of return; (3) purported to give the investors the right to convert the mare leases into other investments and securities, including Gastar stock; (4) oversold the leases; (5) failed to adequately fund the thoroughbred operation and instead diverted the funds into financing Gastar's operations; and (6) refused to convert the mare leases upon demand as promised. According to the plaintiffs, the investment scheme was marketed and operated by GeoStar Corporation, ClassicStar, L.L.C., and their principals. In addition, the plaintiffs alleged that, at

4

all relevant times, GeoStar was the majority owner of Gastar and that Gastar was controlled by GeoStar's principals.

While approximately thirty Mare Lease Suits were ultimately filed, Gastar was named as a defendant in ten. Three of the ten lawsuits were filed against Gastar prior to the Policy Period, and the first of those was filed in 2006 ("the Pre-Policy Suits"). It is undisputed that the remaining seven, the so-called "Seven Gastar Suits," were filed during the Policy Period.

### C. The coverage litigation below

Once it had been named as a defendant in the Seven Gastar Suits, Gastar submitted claims to the insurers. The insurers denied coverage pursuant to Condition C, the Interrelationship of Claims Provision found in the insurance policies. According to the insurers, the Interrelationship of Claims Provision deems the Seven Gastar Suits to have been filed before the Policy Period because they relate back to the Pre-Policy Suits.

Gastar then sued the insurers, alleging causes of action for breach of contract and violations of the Texas Insurance Code. After limited discovery, the insurers filed traditional motions for final summary judgment. The insurers asserted they were entitled to judgment as a matter of law on Gastar's causes of action because the Seven Gastar Suits were not made within the relevant policy period by virtue of Condition C, the Interrelationship of Claims Provision. The insurers argued Condition C deems all Claims that arise from the same facts, or from a series of related facts, to be a single claim made at the time of the earliest claim. The insurers went on to argue the Seven Gastar Suits arose from the same facts as the Pre-Policy Suits and thus were deemed to be made at that point in time, which is outside the relevant policy period.

5

In response, Gastar filed a traditional motion for partial summary judgment. In that motion, Gastar asserted two issues: (1) the Seven Gastar Suits state securities claims as defined by the insurance policies; and (2) the claims raised by the plaintiffs in the Seven Gastar Suits were first made during the Policy Period of the policies and Condition C does not preclude coverage.

Following an oral hearing, the trial court granted the insurers' summary judgment motions and denied Gastar's. This appeal followed.

## ANALYSIS

### I.    The parties' arguments on appeal

Gastar's first issue on appeal concerns whether Condition C, the Interrelationship of Claims Provision, applies to deny coverage for the Seven Gastar Suits filed during the Policy Period. More specifically, the question is whether the Seven Gastar Suits are sufficiently related to the Pre-Policy Suits that they are deemed to be a single Claim made prior to the Policy Period. We conclude that we need not resolve this issue because Condition C does not control for the reasons discussed below. Accordingly, we assume without deciding that the Seven Gastar Suits are related to one or more of the Pre-Policy Suits.

Gastar's fourth issue asks whether Endorsement 10 controls over Condition C, and Gastar's third issue concerns whether its interpretation of the policies is reasonable. We address these issues together. In Gastar's view, because the effect of Condition C is to limit or reduce the coverage initially provided by the Insuring Agreement, we must construe it as an exclusion. In addition, Gastar asserts we must narrowly construe any insurance policy provision, regardless of how it is labeled, that excludes or limits coverage. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Finally,

Gastar contends Condition C is ambiguous or outright conflicts with Endorsement 10. Therefore, it argues, Endorsement 10 controls over the original policy provisions, and we are required to adopt Gastar's reasonable interpretation of the policy in favor of coverage.

In response, the insurers contend Condition C—the Interrelationship of Claims Provision—is a condition, not an exclusion. In support of this contention, the insurers suggest the effect of Condition C is not to limit or exclude coverage, but to "aggregate related claims and place them in the proper policy period." In other words, Condition C defines which Claims fall within the claims-made policy's affirmative grant of coverage.

## II. Standard and scope of review

We address these arguments using the traditional summary judgment standard of review, under which a movant has the burden to show at the trial court level that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

Generally, the denial of a motion for summary judgment is not appealable. *Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). To avoid the application of this general rule, Gastar cites cases holding that when both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews both motions and renders the judgment the trial court should have rendered. *See e.g. FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). For this exception to apply, however, both parties must have sought final judgment relief in their cross-motions for summary judgment or moved for

7

summary judgment on the same issue. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611–12 (Tex. 2012); *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam).

Here, as mentioned above, Gastar moved for a partial summary judgment on two issues: (1) whether the seven Gastar suits state securities claims under the terms of the insurance policy, and (2) whether the claims made in the Seven Gastar Suits were first made during the Policy Period of the policies and whether Condition C precluded coverage. While the insurers' motions addressed the second issue, neither of the insurers moved for summary judgment on the first. Indeed, the insurers expressly reserved that issue for another day. We hold the exception to the general rule does not apply to Gastar's securities claim issue and as a result, we may not address Gastar's fifth issue on appeal challenging the trial court's denial of that portion of Gastar's motion for partial summary judgment.

## III. Rules of construction for insurance contracts

Gastar's second issue on appeal asks what principles of construction apply in resolving the parties' coverage dispute. Insurance policies are construed using ordinary rules of contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Each insurance policy must be interpreted according to its own specific provisions and coverages. *Gilbert Tex. Constr.*, 327 S.W.3d at 129, n.7. In determining the scope of coverage, a court examines the policy as a whole to ascertain the true intent of the parties. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into the policy. *Gilbert Tex. Constr.*, 327 S.W.3d at 126. Because we presume the parties intend what the words of their contract say, we limit our examination to the language of the policy. *Id.* The policy's terms are given their

8

ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense. *Id.* If a term is susceptible to more than one reasonable interpretation, we must resolve that uncertainty in favor of the insured. *Evanston Ins. Co. v. Legacy Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). In addition, when an insurance policy defines its terms, those definitions control. *Id.* at 381.

A reviewing court examines the entire agreement and seeks to harmonize and give effect to all provisions of the policy so that none will be rendered meaningless, useless, or inexplicable. *Gilbert Tex. Constr.*, 327 S.W.3d at 126; *Evanston Ins. Co. v. Atofina Petrochemicals, Inc.*, 256 S.W.3d 660, 668 n.27 (Tex. 2008). When provisions of an insurance policy appear to conflict, a court should first attempt to harmonize the two provisions, but it must give effect to the entire agreement in doing so. *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 345, 347 (Tex. App.—Dallas 2004, pet. denied). If we are not able to harmonize the provisions while also giving effect to all clauses of the policy, and we see more than one reasonable interpretation, we will hold the contract is ambiguous and adopt the interpretation that most favors coverage for the insured. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

When interpreting an exclusionary clause, a court must adopt the construction urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Atofina Petrochemicals*, 256 S.W.3d at 668. Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured. *Id.* An intent to exclude coverage must be expressed in clear and unambiguous language. *Id.* A reviewing court must

interpret an exception to an exclusion of coverage broadly in favor of coverage. *Gilbert Tex. Constr.*, 327 S.W.3d at 134.

## IV. The trial court erred in granting summary judgment for the insurers based on Condition C.

### A. Because Condition C conflicts with Endorsement 10, Endorsement 10 controls.

Applying these standards, we hold that the summary judgment for the insurers must be reversed. Even if we accept the insurers' argument that Condition C places Claims into the proper Policy Period, we conclude Condition C is effectively an exclusion because it narrows the coverage originally created by the Insuring Agreement as explained below. *See Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 424 (5th Cir. 2003) (observing that a prior acts endorsement expressly excluded coverage for losses arising from wrongful acts related to prior wrongful acts that predated the coverage period); *Gilbert Tex. Constr.*, 327 S.W.3d at 132 (observing that a policy's insuring agreement grants coverage, "which is then narrowed by exclusions that 'restrict and shape the coverage otherwise afforded'"); *see also Atofina Petrochemicals*, 256 S.W.3d at 668 (stating that exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured). The title of Condition C as a "Condition" does not control the analysis because Condition L says that titles and headings are included solely for ease of reference and do not affect the policy provisions. Moreover, the Supreme Court of Texas has recognized that exclusions and conditions are two sides of the same coin, as both can reduce the scope of coverage. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 635 (Tex. 2008).

When read in conjunction with the Insuring Agreement, Condition C excludes from coverage a Claim that is initially made during the Policy Period if it is determined to be related to the facts or circumstances underlying another Claim

10

that was made prior to the Policy Period. In other words, but for the operation of Condition C deeming the later Claim to have been made prior to the Policy Period, the insurers would be liable for covering the later Claim under the Insuring Agreement (assuming the other policy requirements were met) because that Claim was first made during the Policy Period. *See Gilbert Tex. Constr.*, 327 S.W.3d at 132 (noting that a policy's insuring agreement grants coverage, "which is then narrowed by exclusions that 'restrict and shape the coverage otherwise afforded'").

On the other hand, Endorsement 10 has a narrower effect because it only excludes from coverage Claims made during the Policy Period but "arising out of, based upon or attributable to any pending or prior litigation as of 5/31/2000, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending prior litigation." Condition C renders Endorsement 10 meaningless because any "Claims" that would be excluded from coverage by Endorsement 10 would already be excluded by operation of Condition C. An interpretation that renders part of a contract meaningless is not reasonable. *Gilbert Tex. Constr.*, 327 S.W.3d at 133; *see also Va. Power Energy Mktg, Inc. v. Apache Corp.*, 297 S.W.3d 397, 403 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (rejecting contract interpretation that would render part of the contract meaningless).

In sum, it is undisputed that the Seven Gastar Suits were filed during the Policy Period. The insurers argue the Seven Gastar Suits are related to Claims first made in 2006 and are therefore deemed to be a single Claim made at the time the earliest was made, which was well before the Policy Period. Condition C would thus exclude coverage for the Seven Gastar Suits, while Endorsement 10 would place them in the covered window for Claims related to litigation filed after May 31, 2000, but before the effective date of the policy. Under these facts, we

11

conclude Condition C and Endorsement 10 conflict or at best, when read together, create an ambiguity. When provisions in an insurance contract conflict, a court must adopt the interpretation that most favors coverage for the insured. *Royal Maccabees Life Ins. Co.*, 146 S.W.3d at 347. As a result, Endorsement 10 controls. *See Mesa Operating Co. v. Cal.Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App.—Dallas 1999, pet. denied) (stating that endorsements to a policy generally supersede and control over conflicting printed terms within the main policy). To hold otherwise would not give full effect to the parties' agreement. *See Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1, 11, 14 (Tex. 2007) (recognizing that an endorsement can preserve or restore coverage that an exception to coverage would otherwise eliminate); *Mesa Operating Co.*, 986 S.W.2d at 754 (stating that endorsements are often issued to add coverage that would otherwise be excluded).

For these reasons, we reject the insurers' contention that Gastar's interpretation of Endorsement 10 impermissibly creates coverage. Instead, we hold that Endorsement 10 restores coverage originally created in the Policy's Insuring Agreement that would have been excluded by Condition C. *See id.*

**B.    The use of the defined term "Claim" in both Condition C and Endorsement 10 supports this interpretation.**

The policy's definition of the term "Claim" supports our interpretation. *See Evanston Ins. Co.*, 370 S.W.3d at 381 (holding policy's definitions of terms control). The policy defines a "Claim" as any written demand for monetary or non-monetary relief, or any civil proceeding commenced by service of a complaint or similar pleading.

Both Condition C and Endorsement 10 apply to Claims as defined by the policy. Yet the insurers contend there is no conflict between the two provisions

because, according to the insurers, they serve different purposes and have no bearing on each other. The insurers go on to assert that Endorsement 10 has a broader sweep because it "would bar coverage for any Claim made or deemed made against Gastar during the Policy Period that arises out of pending or prior litigation against a non-insured related party, such as GeoStar, as long as that litigation was pending or had been filed before May 31, 2000." Thus, according to the insurers, Endorsement 10 applies in situations involving pending or prior litigation that would not implicate Condition C. We disagree with the insurers' analysis.

First, we reject the insurers' suggestion that we interpret sections of the policy separately and in isolation from all other provisions. Instead, we must examine the policy as a whole to ascertain the true intent of the parties. *Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 202.

Second, the insurers' analysis ignores that Condition C would also bar coverage for the very same Claim made against Gastar during the Policy Period that arises out of litigation against GeoStar filed before May 31, 2000. "Claim" is defined as "*any* written demand for monetary or non-monetary relief," as well as "*any* civil proceeding commenced by service of a complaint or similar pleading" (emphasis added). Through its use of "any," the definition of "Claim" is broad enough to encompass litigation against a non-insured related party such as GeoStar. When read in conjunction with this definition and the Policy's Insuring Agreement, Condition C bars coverage for any Claim made against Gastar during the Policy Period arising out of, based upon, or attributable to the same facts or to a series of related facts as a Claim made against GeoStar before the Policy Period. Thus, Condition C goes even further than Endorsement 10 and bars coverage for such a Claim if the litigation against GeoStar was filed between May 31, 2000 and

13

November 1, 2008 (the beginning of the Policy Period). This example confirms our conclusion that Condition C renders Endorsement 10's more narrow exclusion meaningless.

Limiting the effect of Condition C as the insurers suggest would require inserting additional language into the policy. This we cannot do. *Gilbert Tex. Constr.*, 327 S.W.3d at 126 (stating that courts strive to honor the parties' agreement and must not remake their contract by reading additional provisions into the policy).

### C. The original language of Exclusion I also supports this interpretation.

When interpreting a contract, a court may consider language stricken from the agreement. *Wellington Underwriting Agencies, Ltd. v. Hous. Exploration Co.*, 267 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 352 S.W.3d 462 (Tex. 2011). The original Exclusion I, before it was replaced by Endorsement 10, read:

> Unless otherwise specifically stated or provided for in Condition (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:
>
> . . .
>
> (I)  arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending litigation.

As originally written, there was no conflict between Exclusion I and Condition C because the combined effect of both was to exclude from coverage any Claim made during the Policy Period that arose out of the same facts as litigation or Claims that were pending on November 1, 2008 (the inception date of the Policy). But the parties negotiated a change to Exclusion I, removing "any

14

pending or prior litigation as of the inception date of this Policy" and substituting "any pending or prior litigation as of 5/31/2000." This change demonstrates the parties' intent to restore coverage for Claims that arose out of the same facts as litigation filed between May 31, 2000 and the inception date of the Policy. By making this change, the parties created a conflict with Condition C.

Because there is a conflict between Condition C and Endorsement 10, or at best the policy language is ambiguous, we construe the Policy in favor of coverage for the insured. We therefore sustain Gastar's fourth issue and hold that the trial court erred in granting summary judgment for the insurers based on Condition C. Instead, we hold that Condition C of the insurance policies does not provide a basis for denying coverage for the Seven Gastar Suits because they are not excluded by Endorsement 10.

### D.    The cases the insurers cite do not require a different result.

In support of their argument that Condition C is not an exclusion and therefore does not conflict with Endorsement 10, the insurers cite two cases as well as an unpublished order from the U.S. District Court for the Western District of Texas. We find none of the insurers' authority persuasive.

1.    *Highwoods Properties, Inc. v. Executive Risk Indemnity, Inc.*,
      407 F.3d 917 (8th Cir. 2005).

The insurers cite *Highwoods* for the proposition that a "related claims provision . . . is a condition [of the policy's claims-made coverage]." *Id.* at 922. However, the insurers omitted from their *Highwoods* quote a crucial portion of that particular sentence. The omitted section recognized that the effect of the related claims clause at issue was to narrow the scope of coverage. The complete sentence reads: "The related claims provision, however, is a condition (narrowing the scope of coverage) which states that '[a]ll Related Claims will be treated as a single

15

Claim made when the earliest of such Related Claims was first made, or when the earliest of such Related Claims is treated as having been made' as specified by the Policy." *Id.* at 922. In addition, the *Highwoods* court recognized an insurance policy's coverage can be limited by both exclusions and conditions.[2] *Id.* at 921 n.4. As noted above, the Texas Supreme Court has also recognized that "exclusions and conditions are in effect two sides of the same coin," with both capable of reducing the scope of coverage. *PAJ, Inc.*, 243 S.W.3d at 635. Thus, *Highwoods* supports our conclusion that Condition C narrows the scope of coverage.

2. *Reeves County v. Houston Casualty Co.*, 356 S.W.3d 664 (Tex. App.—El Paso 2011, no pet.).

The insurers cite *Reeves County* for the same general proposition that Condition C, the Interrelationship of Claims Provision, is a condition rather than an exclusion. In *Reeves County*, the El Paso Court of Appeals held that the interrelated acts provision at issue was not an exclusion, but instead constituted "other conditions and agreements." *Id.* at 670. The court reached this conclusion without analysis, however, and relied entirely on the location of the interrelated acts provision in that case in a section of the policy labeled "Other Conditions and Agreements." The *Reeves County* opinion does not say whether there was the equivalent of Condition L found in this policy. As mentioned above, Condition L directs that headings and titles are included only for ease of reference and do not impact the effect of the provisions. Because the parties are bound by the language of this particular policy, we conclude that *Reeves County* is distinguishable.

---

[2] The exact language used is "The policy's coverage is further limited by both exclusions and conditions: the exclusions restrict coverage for certain claims, even if they are made within the policy period; the conditions operate to narrow the scope of claims that are made within the policy period." *Highwoods Props.*, 407 F.3d at 921 n.4.

3. *Clarendon Am. Ins. Co. v. The Molpus Co.*, No. A-04-CA-563-SS (W. D. Tex. Aug. 9, 2005) (unpublished order).

In *Molpus*, the insuring agreement had a Condition C identical to the Condition C found in the policy at issue here:

All Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions, or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made.

*Id.* at 9.

The district court rejected each of Molpus's arguments in favor of coverage. These arguments included the contention that the insurance company improperly converted Condition C into an exclusion. The court disagreed, stating that "Condition C speaks to the interrelationship of Claims, stating Claims arising out of the same factual circumstances are considered to be a single Claim made at the time the earliest Claim was made." *Id.* at 11. The court reasoned that "Condition C does not . . . address the circumstances under which such interrelated claims are covered or excluded from coverage," and therefore it is not an exclusion. *Id.*

*Molpus*, an unreported order from a federal district court, is not binding authority on this Court. In addition, we are not persuaded by the *Molpus* court's decision for several reasons. First, the *Molpus* order does not include all relevant policy language, so we cannot conclude that it dictates the same result here. *See Gilbert Tex. Constr.*, 327 S.W.3d at 129 n.7 (stating that each insurance policy must be interpreted according to its own specific provisions and coverages); *see also Pioneer Chlor Alkali Co. v. Royal Indem. Co.*, 879 S.W.2d 920, 936 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (finding a case cited by the insurance company unpersuasive because it did not discuss the insuring language of the

policy or provide sufficient facts to determine if the cited case was sufficiently similar to the case on appeal to support the insurance company's argument).

Second, we conclude the *Molpus* court incorrectly gave priority to a single section of the policy instead of considering the entire policy in its analysis. *But see Pioneer Chlor Alkali*, 879 S.W.2d at 936 (concluding insurance policy was ambiguous after looking at the "policy in its entirety without isolating or giving priority to any one phrase, sentence, or section"). Finally, in concluding that the condition at issue was not an exclusion, the *Molpus* court did not consider the inherent limiting effect of its language as we have described it above. Accordingly, we decline to follow *Molpus*.

## CONCLUSION

Having sustained Gastar's fourth issue on appeal, we reverse the trial court's summary judgment, and we render partial summary judgment that Endorsement 10 precludes the insurers from denying coverage for the Seven Gastar Suits based on Condition C and the Pre-Policy Suits. We remand the case to the trial court for further proceedings in accordance with this opinion.


/s/    J. Brett Busby
        Justice



Panel consists of Chief Justice Hedges and Justices Brown and Busby.

18