# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41050

United States Court of Appeals
Fifth Circuit

**FILED**

August 2, 2019

Lyle W. Cayce
Clerk

ADI WORLDLINK, L.L.C.,

Plaintiff - Appellant

v.

RSUI INDEMNITY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The defendant insurance company denied the plaintiff policyholder's claims under a directors and officers liability policy. The district court held that the insured had learned of a related claim when the previous year's policy was in effect; under clear policy provisions, the first policy was therefore the one to cover all of the claims. The court then concluded that all claims were properly denied because, even though the insured gave timely notice of the later claims, it had failed to give timely notice of the initial one.

We AFFIRM.

No. 17-41050

FACTUAL AND PROCEDURAL BACKGROUND

Beginning in late 2012, the plaintiff ADI Worldlink, L.L.C. annually purchased directors and officers liability insurance policies from the defendant RSUI Indemnity Company. The 2014 policy had a coverage period from December 31, 2013 to December 31, 2014, while the 2015 policy covered the subsequent year, ending December 31, 2015. The 2015 policy was later extended through January 14, 2016.

Significant provisions in the 2014 and 2015 policies include RSUI's obligation to pay "all Loss [Worldlink] is legally obligated to pay" in relation to "a Claim for a Wrongful Act . . . first made against [Worldlink] during the Policy Period" and timely noticed by Worldlink to RSUI under the terms of the policies.

The 2015 policy also contained a provision that deemed all claims related in a specific manner to have been made at the time of the earliest such claim. We label it the 2015 interrelatedness provision, and it stated:

> All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy, . . . and shall be deemed first made when the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.

The purpose of this provision appears obvious. An initial claim is made; the insured gives notice of the claim; if in later policy years new claims are made that are related in the relevant ways to the first one, their handling continues consistently under that first policy. The relevant claims in this case concern Wordlink's employment practices, primarily an alleged failure to pay overtime wages to nonexempt employees. The insurance dispute arises

2

No. 17-41050

because of Worldlink's failure to give notice to RSUI of the first employee's claim, which it received in August 2014. In April 2015, other employees filed similar claims against Worldlink. Finally, in September 2015, Worldlink first notified RSUI of the claims.

Relying on the 2015 interrelatedness provision, RSUI deemed all the employment claims to be a single claim that were controlled by the 2014 policy. The 2014 policy states that "it shall be a condition precedent to the Insurer's obligation to pay, that the Insured give written notice of such Claim to the Insurer as soon as practicable" after Worldlink learns of the claim. Comparable language is in the 2015 policy. A final deadline for notice was no later than the expiration of the 2014 policy. Worldlink does not argue it complied with that obligation as to the 2014 claim. Because of the absence of notice of the first claim and the deeming of all later claims to be related to that initial claim, RSUI denied coverage on all.

Worldlink sought a declaratory judgment to compel RSUI to cover all the claims. It also sought damages for breach of contract and violations of the Texas Unfair Insurance Practices Act, the Texas Deceptive Trade Practices Act, and the Texas Prompt Payment of Insurance Claims Statute. The parties filed cross motions for summary judgment. The district court granted summary judgment for RSUI. It concluded that timely notice of the 2014 claim was not given. Further, it found the 2015 claims related back to the 2014 claim and were governed by the 2014 policy, thus making it proper for RSUI to deny coverage of all the claims. Because RSUI had no obligation to cover any claims, the district court held it also had no liability under the Texas statutes. This same analysis would reasonably apply to Worldlink's breach of contract claim, which the district court dismissed without a separate analysis.

3

No. 17-41050

DISCUSSION

On an appeal from the grant of a summary judgment, we generally are concerned at least in part with whether the district court properly determined that there were no genuine disputes of material fact. *See* FED. R. CIV. P. 56(a). Today's appeal concerns only legal issues, though, namely, the interpretation of insurance policy provisions. Regardless of the questions posed, we review the district court's ruling on a summary judgment *de novo*. *RSUI Indem. Co. v. Am. States Ins. Co.*, 768 F.3d 374, 377 (5th Cir. 2014).

Worldlink's principal challenge is to the district court's reliance on the interrelatedness provision in the 2015 policy, joined with the provision in the 2014 policy obligating the insured to give timely notice, to deny the claims that arose in 2015 and for which it gave notice. A central component of our review is the effect of a 2013 Texas Court of Appeals decision about a similar policy. The only state statutory claim Worldlink pursues on appeal concerns the Texas Prompt Payment Statute.

*I. Interrelatedness of the 2014 and 2015 Claims*

There was some dispute in district court as to whether Texas law applies in this diversity suit. The district court determined that it did, and the issue is not renewed on appeal. We thus accept that Texas law controls.

Most relevant to our analysis would be applicable authority from the Texas Supreme Court. *CHS, Inc. v. Plaquemines Holdings, L.L.C.,* 735 F.3d 231, 235 (5th Cir. 2013). We have no such decisions. In their absence, we "defer to intermediate state appellate court decisions, 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Memorial Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Tech., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).

4

No. 17-41050

One Texas intermediate court opinion has been the center of attention in this case: *Gastar Exploration Ltd. v. U.S. Specialty Insurance Co.*, 412 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The parties have not proposed nor have we found any reason to form a conviction that the Texas Supreme Court would reject that court's application of state law to policy provisions similar to those at issue here. The district court distinguished *Gastar* but did not suggest the opinion was inconsistent with what the Texas Supreme Court would hold on the issues the *Gastar* court decided. Thus, we consider that decision to be controlling on this appeal. We examine it closely.

### A. Texas Court of Appeals' Gastar *Opinion*

The background for the Texas Court of Appeals' opinion was that Gastar Exploration obtained directors and officers liability policies from U.S. Specialty Insurance Company as its primary insurer and Axis Insurance Company as its excess carrier. *Gastar*, 412 S.W.3d at 579. The policies each covered the period of November 1, 2008 to November 1, 2009. *Id.* Because the provisions of the two policies were identical, the court evaluated only the U.S. Specialty policy. *Id.* at 579 n.1. That policy contained an interrelatedness provision that aggregated claims

> alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made.

*Id.* at 580 (emphases omitted).

Thus, if a claim arising during the policy period was related under this quoted provision to claims arising before the policy period, U.S. Specialty

5

would consider the former claims to predate the policy's existence and would not cover them under that policy.

Gastar was named as a defendant in ten lawsuits, all pertaining to the same alleged fraudulent investment scheme. *Id.* at 580–81. Seven of the lawsuits arose during the 2008-2009 policy period; three predated it. *Id.* at 581. U.S. Specialty denied coverage of the seven claims brought during the policy period, asserting they fell into the policy's interrelatedness provision and effectively predated the policy. *Id.*

Gastar argued that a different provision in the policy permitted coverage. That provision, labeled an "endorsement," provided that the insurer would not be liable to pay on a claim "arising out of, based upon or attributable to any pending or prior litigation as of 5/31/2000, or alleging or derived from the same or essentially the same facts . . . [as the] pending [or] prior litigation." *Id.* at 584–85.

The *Gastar* court concluded that the endorsement, when read with the interrelatedness provision, created ambiguity. That was because the endorsement excluded new claims only if the prior related claims arose before May 31, 2000, while the interrelatedness provision excluded coverage of related claims made prior to November 1, 2008, the beginning date of the policy. *Id.* at 584. The court stated: "When provisions of an insurance policy appear to conflict, a court should first attempt to harmonize [them while] . . . giv[ing] effect to the entire agreement." *Id.* at 583. If that is impossible, and "more than one reasonable interpretation [of the policy exists, Texas courts] will hold the contract is ambiguous and adopt the interpretation that most favors coverage for the insured." *Id.* In the specific context of clauses excluding coverage, Texas courts adopt the insured's reasonable interpretation even if the insurer's position "appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.*

No. 17-41050

In understanding an authoritative state-court precedent such as *Gastar*, it may help to acquire context by examining the arguments made by the parties. Worldlink and RSUI eased that task by submitting to the district court the *Gastar* appellate briefs. Gastar's brief had a vigorous argument that the first three suits were not related to the seven later claims, while the insurer argued the contrary. The dispute over this central point was barely noted in the *Gastar* opinion. The court simply said it "need not resolve this issue" because the interrelatedness provision "does not control." *Id.* at 581. Placing this factual issue aside, the *Gastar* court held that the interrelatedness provision "render[ed the endorsement] meaningless because any 'Claims' that would be excluded from coverage by [the endorsement] would already be excluded by operation of" the interrelatedness provision. *Id.* at 584. The other side of the coin was that the interrelatedness provision purported to exclude claims arising before the policy while the endorsement restored them to coverage if they fell into "the covered window for Claims related to litigation filed after May 31, 2000, but before the effective date of the policy." *Id.* The interrelatedness provision and the endorsement "conflict[ed] or at best, when read together, create[d] an ambiguity." *Id.* Citing interpretation rules favorable to insureds, the court held the endorsement controlled and "restore[d] coverage [of claims] . . . that would have been excluded by" the interrelatedness provision. *Id.* at 585.

We now consider the district court's application of *Gastar* in our case.

*B.* Gastar's *applicability to the Worldlink-RSUI Policies*

The district court assumed that the 2015 claims were factually related to the 2014 claim. That finding then led to the holding that the 2015 interrelatedness provision deemed them all to fall under the 2014 policy. The

7

No. 17-41050

assumption of relatedness is unchallenged on appeal. We thus make the same assumption for purposes of the following analysis.

As we have discussed, the *Gastar* opinion refused to apply that policy's interrelatedness provision because of what was labeled an endorsement. We have not yet quoted a similar provision in the Worldlink-RSUI policies. There is one, and this is it:

> Exclusion – Prior and/or Pending Litigation Backdated
> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured . . . alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any Insured that was commenced or initiated prior to, or pending as of December 31, 2012, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

The general role of such provisions is described in a treatise:

> When an insurer first issues a D&O policy to a corporation, an exclusion is frequently included which eliminates coverage for claims arising from pending or prior litigation or from any facts or circumstances involved in such litigation. The insurers' intent is to avoid exposure for the "burning building" (*i.e.*, claims which the insured knew about or should expect when they purchased the policy). This exclusion will reference a date (frequently the inception date of the first D&O policy issued by the insurer to the insureds) which is used to determine whether the litigation is "pending or prior."

4 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 26.07[3][e] (2018).

This statement of purpose indicates the earliest date "frequently" is the commencement date of the first policy. The *Gastar* Endorsement, though, excluded claims predating May 31, 2000, a date the briefing from that case seems to indicate was before coverage by any policy. The similar provision in the RSUI policy here extended coverage on related claims to no earlier than December 31, 2012, which was the commencement date of Worldlink's first

No. 17-41050

policy with RSUI. In *Gastar*, then, claims that predated any insurance policies by three years were still provided some protection. In the present case, the reach of the similar exclusion is only to the commencement date of the first policy. We do not wish to make too much of the distinction, as indeed there may be other facts unavailable to us explaining the 2000 date in *Gastar*. We can say that the *Gastar* provision was broader to the extent the insurer did not foreclose, at least in that provision, earlier claims for which no notice would have been given because the claimant had not yet been insured. This gives additional complexity to assessing a failure of notice in *Gastar*.

Despite the difference we just discussed, there are certainly similarities between the provisions regarding prior and pending litigation here and in *Gastar*. The provisions were not distinguished by the district court. The district court simply found no significance to the language because it accepted the insurer's argument that RSUI denied coverage to Worldlink for a reason that was not discussed in *Gastar*. The 2015 RSUI policy stated that sufficiently related claims "shall be deemed to be a single Claim for all purposes under this policy." The court found that the claims from 2014 and from 2015 were single claims. Thus, it was essential that this "single Claim" get properly initiated. The plaintiff's failure to make a timely report of the 2014 claim was held to preclude coverage for all the claims.

In addition, the district court explicitly held that *Gastar* was not directly on point. We agree to the extent that the Texas Court of Appeals did not discuss any obligations for the insured that may have arisen in prior policies. The focus by the *Gastar* court was on two groups of lawsuits: those filed against the insured during the 2008-2009 policy period and others that the court labeled the "pre-policy suits." *Gastar*, 412 S.W.3d at 581. The court's opinion does not mention that there were any policies covering the earlier period.

9

No. 17-41050

As we already mentioned, though, the *Gastar* briefing reveals there were earlier policies. The insured had policies with both of its insurers for several years before the ones at issue in the litigation. Gastar first purchased a policy from its primary insurer, U.S. Specialty, in November 2006, and renewed or replaced it up to the policy period of November 2008 – November 2009 that was relevant to the case. The excess carrier, Axis, first issued a policy to Gastar in 2003 and renewals or replacement policies continued until the November 2008 – November 2009 policy year at issue in the lawsuit. The *Gastar* court also addressed an interrelationship provision, but it did not go back to the prior policies that existed but were unmentioned in its opinion to tease out any obligations that may have arisen at that time that could affect later related claims.

This additional information from the *Gastar* briefs undermines the district court's distinction that all the current claims in our case fell within the period of some policy "and not wholly outside of any policy period" as in *Gastar*. Still, we do not find the possible factual error to be significant. While learning of these prior policies from the *Gastar* briefing, we also learned the parties had not made an issue of a failure to give timely notice to the insurer of claims under earlier policies. We see it as beyond our proper role in interpreting this state court opinion to try to factor in unraised and unaddressed insurance-policy provisions.

Had the parties focused the *Gastar* court on notice provisions in earlier policies, we see it as an unanswerable question of whether the court would have still reached the same result. We take the Texas precedent as it was written, not as it might have been. What caused that court to rule in favor of coverage was an inconsistency between the provision on interrelated claims with the provision that barred related claims only in narrower circumstances. *Id.* at 584.

No. 17-41050

We do not have that situation here.  Instead, a policy provision construes the relevant 2015 claims as being subject to the 2014 policy.  That earlier policy would have provided coverage except that the insured failed to comply in 2014 with a notice provision.  We conclude the district court was correct to rely on this difference.  We must go beyond *Gastar* to consider the effect of Worldlink's failure to comply with the 2014 policy's requirement of giving notice before the end of that policy.  As did the district court, we conclude that the absence of notice, joined with the fact that the 2015 policy deemed all the later claims to fall under the 2014 policy, prevented coverage of the claims.

Our refusal to augment the *Gastar* holding to make it apply even when no notice of earlier related claims was given under earlier policies is driven by our limited role.  We are here to interpret a contract between two parties.  The straightforward effect of the terms appears clear.  Nonetheless, if there were controlling law that reasonably would reach these terms and demand a different interpretation, we would adjust our view.  We do not have that.  The *Gastar* court relied on an inconsistency in two provisions.  That inconsistency is not in play here.  Instead, we have the operation of several provisions that must be read in sequence.  The final step in the sequence, a step never discussed in *Gastar,* convinces us there is no coverage because notice of the claim under the controlling policy for these related claims was not timely given.

Consequently, the 2015 claims arising from lawsuits that were related to the others brought in 2014 were governed by the earlier policy.  The absence of timely notice means the claims were properly denied.


*II.     The Texas Prompt Payment Claim*

The Texas Prompt Payment Statute requires insurers to respond to claims' processing within defined time periods on penalty of damages and attorneys' fees.  *See* TEX. INS. CODE ANN. §§ 542.051–061.  In the district court,

No. 17-41050

Worldlink argued for Texas Prompt Payment relief on the 2015 claims. Because the district court held "there is no coverage for the 2015 Claims under the 2015 Policy," it necessarily denied relief under this statute.

For the same reason, we conclude there is no relief available to Worldlink under this statute.

AFFIRMED.

No. 17-41050

JAMES L. DENNIS, Circuit Judge, dissenting:

As the majority acknowledges, Texas law governs our decision in this diversity case. In *Gastar Exploration Ltd. v. U.S. Specialty Insurance Co.*, 412 S.W.3d 577 (Tex. App. 2013), a Texas Court of Appeals addressed a claim by a plaintiff, the insured, that it was covered under an insurance company's claims-made-and-reported insurance policy that was worded similarly to the policy at issue here. In that case, the Texas court ruled in favor of coverage for the insured, finding an inconsistency in that policy between a provision on interrelated claims that excluded a claim from coverage under the policy at issue and a Prior and Pending Litigation Endorsement that "barred related claims only in narrower circumstances." **Maj. at 11.** The majority concludes that the case before us is different from *Gastar* because it finds that "that inconsistency is not in play" in the policy at issue here. **Maj. at 11.** Because I disagree and believe *Gastar* is materially indistinguishable and thus mandates reversal, I respectfully dissent.

Here, as in *Gastar*, the parties entered into claims-made-and-reported insurance policies. The policies at issue in both cases included "interrelatedness provisions," which stated that all related claims would be aggregated together and deemed to have been made at the time of the earliest such claim. If that earliest claim was made under a prior policy period covered by a different contract, then the later related claim would also be covered under that prior contract instead of the present policy. *Gastar*, 412 S.W.3d at 580; Maj. at 2. In both *Gastar* and the case before us, the policies also included Prior and Pending Litigation Endorsements that excluded claims from coverage if they arose from litigation initiated prior to a certain date. In both cases, the cut-off date provided in those endorsements was several years before

13

that contract's policy period began.[1]   *Gastar* held that the two contract provisions in that case conflicted because "any 'Claims' that would be excluded from coverage by [the] Endorsement would already be excluded by operation of [the interrelatedness provision]."   *Gastar*, 412 S.W.3d at 584.   The majority declares that "we do not have that situation here," finding that the interrelatedness provision did not exclude the 2015 claim from coverage—it merely rendered it subject to a predecessor policy.    Because the 2015 interrelatedness provision did not prevent the claim from being covered under that different, earlier policy, the majority reasons, this is not a case like *Gastar* where the interrelatedness condition bars coverage of a claim while the Endorsement would permit coverage.

Respectfully, I believe the majority errs by relying on whether the 2015 interrelatedness provision was what ultimately prevented Wordlink from receiving any insurance coverage for its 2015 claim.  *Gastar* itself demonstrates that the majority's analysis relies on a red herring.  In determining that the substantially similar interrelatedness provision at issue in *Gastar* was an exclusion, the Texas court did not, as the majority appears to do here, ask whether that provision precluded insurance coverage *altogether* for the claim. Instead, the critical question was whether the provision narrowed what *that particular contract* would otherwise cover under the terms of its Insuring Agreement.  *Gastar* held that the interrelatedness provision—labeled in that contract as "Condition C"—was "effectively an exclusion *because it narrows the*

---

[1] Though the date in Worldlink's 2015 policy—December 31, 2012—was, as the majority identifies, the commencement date of its *first* policy with RSUI, this was still two years before the policy period governed by the 2015 contract.  Maj. at 2, 9.

*coverage originally created by the Insuring Agreement.*"[2]   412 S.W.3d at 583 (emphasis added).  It then elaborated:

> When read in conjunction with the Insuring Agreement, Condition C excludes from coverage a Claim that is initially made during the Policy Period if it is determined to be related to the facts or circumstances underlying another Claim that was made prior to the Policy Period. In other words, but for the operation of Condition C deeming the later Claim to have been made prior to the Policy Period, the insurers would be liable for covering the later Claim under the Insuring Agreement (assuming the other policy requirements were met) because that Claim was first made during the Policy Period.

*Gastar*, 412 S.W.3d at 584 (citation omitted).

As the majority acknowledges, *Gastar* "did not go back to prior policies that existed but were unmentioned in its opinion to tease out" whether the later related claims could still get coverage under those former policies.  This is because foundational contract law principles dictate that contract interpretation is based, first and foremost, on the language in that contract itself, without consideration of the effect of a separate, former contract.  *See Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460 (Tex. App. 2007) ("When interpreting a contract, the entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties."); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2 d 132, 133 (Tex. 1994) (explaining that general contract interpretation rules apply to the interpretation of insurance contracts

---

[2] The Insuring Agreement, the interrelatedness provision, and the Endorsement are all separate provisions of the insurance policies at issue.

under Texas law).  The court in *Gastar* adhered to this methodology—it evaluated the terms of the single contract in dispute, determined that there was ambiguity within the provisions of that single contract, and resolved that ambiguity in favor of the insured, as required under Texas law.  *See Gastar*, 412 S.W.3d at 583–85.

Following *Gastar*'s reasoning, then, we should read the 2015 interrelatedness provision at issue in this case in conjunction with the 2015 Insuring Agreement, determine what coverage was originally created by that Insuring Agreement, and ask whether the interrelatedness provision narrows that coverage.  *See Gastar*, 412 S.W.3d at 583 ("Each insurance policy must be interpreted according to its own specific provision and coverages. . . . [W]e limit our examination to the language of the policy." (citations omitted)).  The 2015 Insuring Agreement reads:

> "if a Claim for a Wrongful Act is first made against any Insured Person *during the Policy Period* and reported in accordance with [the notice requirements], the Insurer will pay on behalf of such Insured Person all Loss such Insured Person is legally obligated to pay."

(emphasis added).  "Policy period" is then defined as "the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page," which in turn designates the Policy Period as "from 12/31/2014 to 12/31/2015 12:01 AM Standard Time at the Insureds address."  *See Gastar*, 412 S.W.3d at 583 ("[W]hen an insurance policy defines its terms, those definitions control." (citing *Evanston Ins. Co v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012)). The 2015 Insuring Agreement, then, covers claims made and timely reported during the defined Policy Period, from

December 2014 through December 2015. The 2015 claim falls under this definition.

However, because of the effect of the interrelatedness provision, the 2015 policy does not cover the 2015 claim. Instead, the claim is only eligible for coverage under the terms of the predecessor 2014 policy. Maj. at 3 ("Relying on the 2015 interrelatedness provision, RSUI deemed all the employment claims to be a single claim that were controlled by the 2014 policy."). "In other words, but for the operation of [the interrelatedness provision] deeming the later Claim to have been made prior to the Policy Period"—defined in the contract as "12/31/2014 to 12/31/2015"—"the insurers would be liable for covering the [] [c]laim under the Insuring Agreement." *See Gastar*, 412 S.W.3d at 584. Because the interrelatedness provision means that the 2015 policy no longer covers a claim made during the designated Policy Period as it otherwise would under the Insuring Agreement, the "coverage originally created by [the 2015] Insuring Agreement" has been narrowed. As in *Gastar*, it is irrelevant whether the claim is or is not covered under an earlier policy—the only pertinent question is whether the interrelatedness provision excludes the claim from coverage under the 2015 policy. Under *Gastar*, the 2015 interrelatedness provision is an exclusion.

Once we establish that the interrelatedness provision here is just as much an exclusion as the corresponding condition in *Gastar*, it becomes clear that these cases are materially indistinguishable. While the 2015 interrelatedness provision excludes claims from coverage under the 2015 policy if they relate to claims brought before December 2014, the Endorsement only excludes claims if they are related to claims from before December 2012. Accordingly, as in *Gastar*, the interrelatedness provision "renders [the] Endorsement [] meaningless because any 'Claims' that would be excluded from

17

No. 17-41050

coverage by [the] Endorsement would already be excluded by operation of [the interrelatedness provision]." *Gastar*, 412 S.W.3d at 584. As in *Gastar*, the provisions "conflict or at best, when read together, create an ambiguity." *Id.* And "[w]hen provisions in an insurance contract conflict, a court must adopt the interpretation that most favors coverage for the insured." *Id.* (citations omitted).

For these reasons, I respectfully dissent.

18