

# NUMBER 13-22-00096-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LLOYD MICHAEL HAMILTON,                                              Appellant,

v.

CONOCOPHILLIPS CO. AND
BURLINGTON RESOURCES OIL
AND GAS CO. LP,                                                      Appellees.

## On appeal from the 267th District Court
## of DeWitt County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Justice Longoria**

Appellant Lloyd Michael Hamilton appeals from the trial court's entering of a partial take-nothing judgment against him in favor of appellees ConocoPhillips Co. (ConocoPhillips) and Burlington Resources Oil & Gas Co. LP. (Burlington). By two issues,

appellant argues: (1) he did not consent as a matter of law to appellees' use of his surface estate for a horizontal well project, and (2) the trial court erred by granting appellees' nonsuit of its claims without prejudice after a jury trial. We affirm in part and reverse and render in part.

## I.  BACKGROUND

Appellant's father, Graves Graham Hamilton, died in 2004, leaving behind his wife Mary Ellen Hamilton, appellant, and appellant's three siblings. Graves's will provided for the disposition of his approximately 2,000-acre ranch (Hamilton Ranch) between Mary Ellen, appellant, and the three siblings. Specifically, Graves's will divided and distributed a 954-acre portion of the Hamilton Ranch into five parts and distributed the parcels to appellant, to Mary Ellen, and in trust to appellant's three siblings, respectively. The will provided that the remaining acreage would be distributed in undivided interests to appellant, Mary Ellen, and the siblings' three trusts.

In 2007, appellant, Mary Ellen, the siblings, and other family members entered into an oil and gas lease covering the Hamilton Ranch and surrounding land. The lease was later assigned to Burlington. In 2019, Burlington and the landowners, including appellant, entered into a production sharing agreement.

In 2020, after litigation was brought by Mary Ellen to partition the ranch properties, the family members agreed to a surface partition. A mediated settlement agreement was signed in May 2020, a family settlement agreement was signed and dated in July 2020, and an agreed final judgment was rendered on August 11, 2020. Finally, the partition was recorded in the DeWitt County property records on December 8, 2020.

2

In July 2020, Burlington staked out boundaries of a proposed well pad. Appellant objected to the location, stating that he had seen jaguarundis—an endangered cat species thought to be extinct in Texas—in the area. Appellant suggested a different location for the pad. Burlington relocated its pad to a different location than the one suggested by appellant because the selected location had already been mostly cleared and construction would pose less of a threat to any possible jaguarundis. The new pad site encompassed four live oak and pecan trees and required construction of a road, and therefore, on August 25, 2020, Burlington entered into a surface use agreement with Mary Ellen prior to clearing the pad site. Burlington then secured the permits entitling it to drill horizontal sharing wells.

Appellant filed suit against Burlington and its parent company ConocoPhillips in September 2020, and he secured a temporary injunction based on the accommodation doctrine, citing the alleged presence of jaguarundis. *See Getty Oil Co. v. Jones*, 470 S.W.2d 618, 622 (Tex. 1971) (setting forth the accommodation doctrine, which provides that "where there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under the established practices in the industry there are alternatives available to the lessee whereby the minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee"). Appellant later amended his petition to expand his claims, alleging, in addition to the accommodation doctrine, that there was (1) breach of the lease and production sharing agreements for failure to obtain appellant's consent before constructing the pad site, (2) trespass for failure to obtain appellant's consent, and (3) breach of the lease for

3

excessive surface use. Appellant also sought declaratory judgment invalidating the surface use agreement between Burlington and Mary Ellen. Appellant did not just complain about the location of the pad site, but also the planned use for the site for "off-premises production." Burlington answered and counterclaimed for (1) breach of contract for appellant's interference with its water permit application, (2) breach of contract based on appellant's interference with the use of the property, and (3) wrongful injunction.

## A.     Trial Court Rulings

During a pre-trial hearing, the trial court was asked by both sides to interpret the production sharing agreement as a matter of law. Burlington argued that the production sharing agreement gave it the right to place the pad on appellant's property, thus rendering the surface use agreement with Mary Ellen moot. In contrast, appellant argued that the production sharing agreement was drafted to calculate the royalties payable on oil and gas and that a separate surface use agreement was necessary to allow Burlington to conduct the proposed drilling activities, including the construction of the drilling pad. Both sides agreed that the trial court's ruling on the effect of the production sharing agreement could render certain claims moot for trial. The trial court allowed the parties to brief the issue, among others, after the conclusion of the lengthy hearing.

The trial court ultimately granted Burlington's request to construe the lease and production sharing agreement as granting Burlington the right to conduct off-lease production by creating a sharing well. Effectively, the trial court's pre-trial ruling narrowed the scope of the jury trial to appellant's claim regarding the accommodation doctrine.

A jury trial was held and at the close of evidence, the jury rendered a unanimous

verdict in favor of Burlington, rejecting appellant's claim for breach of the accommodation doctrine. The trial court then signed a judgment in Burlington's favor, ordering that appellant take nothing on his claims, denying appellant's request for declaratory judgment and permanent injunction, dissolving the temporary injunction, and instructing the parties to confer on a schedule for a hearing on damages related to Burlington's counterclaim. Burlington subsequently nonsuited its counterclaim "without prejudice," and the trial court rendered an order granting the nonsuit, resulting in a final judgment. This appeal followed.[1]

## II.    PRE-TRIAL RULINGS

By his first issue, appellant argues that the trial court erred by: (1) denying his claim for a declaratory judgment that the surface use agreement between Mary Ellen and Burlington was invalid; and (2) refusing to submit jury questions on liability and damages for breach of the lease, breach of the production sharing agreement, and trespass.

## A.    Standard of Review

Texas Rule of Civil Procedure 166(g) provides that a court may hold a pre-trial hearing to identify "legal matters to be ruled on or decided by the court." TEX. R. CIV. P. 166(g). This rule authorizes trial courts to decide matters that, though ordinarily fact questions, have become questions of law because "reasonable minds cannot differ on the outcome." *See Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 322 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). When a Rule 166(g) order disposes of claims in this fashion, the order is akin to a summary judgment or directed verdict, and

---

[1] We note that appellant does not challenge the jury's finding on the accommodation doctrine.

appellate review is de novo. *See id.* at 324 (reviewing a Rule 166 order under the standard that applies to directed verdicts); *McCreight v. City of Cleburne*, 940 S.W.2d 285, 287 (Tex. App.—Waco 1997, writ denied) (equating a Rule 166 order with a partial summary judgment); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (holding the legal sufficiency test is the same for summary judgments, directed verdicts, and appellate no-evidence review).

## B. Discussion

### 1. Breach of Contract

A breach of contract plaintiff must prove: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)).

Appellant contends that, as a matter of law, he did not consent to appellees' use of his surface estate for the horizontal-well project to include off-lease production. He argues that because his consent was not given, Burlington breached the lease agreement when it moved forward with its project. There is no dispute that the lease grants Burlington the right to explore for and produce oil and gas on the Hamilton Ranch. The parties further agree that the lease, standing alone, does not allow Burlington to drill a horizontal sharing well. The parties differ, however, in the interpretation of the production sharing agreement. Appellees argue that the lease and the production sharing agreement, taken

6

together, authorized them to conduct the challenged activities.

As the parties discussed at oral argument in this matter, the relevant portion of the production sharing agreement is section 5, which states:

5. **Surface Use.** To the extent Owner may own any interest in the surface estate within the Lease, Owner grants Burlington easements (including subsurface easements) and rights-of-way (including all reasonable ingress and egress rights) on, in, and under the Leases associated with any Sharing Well, including easements and rights-of-way for:

    a. drilling, deepening, reworking, replacing, recompleting, maintaining, or conducting operations in the search or production of oil or gas associated with any and all Sharing Wells;

    b. laying, maintaining, and replacing pipelines and roads;

    c. gathering, storing, transporting, and treating hydrocarbons; and

    d. constructing and maintaining production facilities and infrastructure associated with or convenient for the operation of any Sharing Well. SUBJECT HOWEVER TO THE FOLLOWING LIMITATIONS, TERMS AND PROVISIONS;

        i. All above ground surface use and surface operations described herein shall be conducted in accordance with and governed and limited by the existing terms and provisions of the Lease described in Exhibit A dealing with surface use and payment for the use and damages set forth therein.

Appellant argues that, though the production sharing agreement provides for an easement for additional surface uses, the language following subsection 5(d) above requires that those surface uses be governed by the existing terms of the lease, which do not permit the drilling of a horizontal well. Appellees contend that such an interpretation "renders hollow" the very purpose of the production sharing agreement, which is to allow the proposed horizontal drilling activity. At oral argument, appellant agreed that if the "subject however to the following limitations, terms and provisions" language was removed from subsection 5(d) of the production sharing agreement, appellees would have an easement for the surface use of appellant's land.

7

In reviewing a contract, a court examines the entire agreement and seeks to harmonize and give effect to all its provisions so that none will be rendered meaningless, useless, or inexplicable. *Gastar Expl. Ltd. v. U.S. Specialty Ins.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (first citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); and then citing *Evanston Ins. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 n.27 (Tex. 2008)). Unambiguous language used by the parties in a contract should be accorded its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985); *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966). Our primary goal in interpreting a contract is to give effect to the intent of the parties as expressed in the agreement itself, not from the parties' present interpretation. *First State Bank v. Keilman*, 851 S.W.2d 914, 922 (Tex. App.—Austin 1993, writ denied).

Appellant asks this Court to interpret the "subject however to the following limitations, terms and provisions" language as requiring appellees to seek a separate surface use agreement to receive the exact easements granted to appellees by section 5. This roundabout interpretation would render the entirety of section 5 meaningless. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004) (stating that we must not construe one clause in a manner that renders other provisions meaningless). The very purpose of section 5 is for the surface owner to grant Burlington an easement and right-of-way to conduct operations for a sharing well so that Burlington may operate as intended under the production sharing agreement. Accordingly, we do not construe the "subject however

8

to" language as requiring Burlington to seek separate consent to any surface use for the purposes of operating a sharing well. *See id.* Therefore, the trial court did not err in interpreting the production sharing agreement as granting appellees the easement as a matter of law. Having interpreted the production sharing agreement as granting the easement, we further conclude that appellant's breach of contract claim necessarily fails as appellant's claim relied upon his assertion that appellees were required to seek his consent under the production sharing agreement. Thus, the trial court did not err in rendering a take-nothing judgment on appellant's breach of contract claim.

### 2. Trespass

Appellant also argues that the trial court erred in failing to submit his trespass claim to the jury. Appellant's trespass claim, however, relies upon the same underlying allegations as his breach of contract claim: that appellees illegally entered his property without his consent. Having already determined that the production sharing agreement granted appellees an easement onto the surface of the estate, and that further consent was not necessary, we further conclude that appellant's trespass claim necessarily fails. The trial court did not err in rendering a take-nothing judgment on appellant's trespass claim.

### 3. Declaratory Judgment

Appellant raised a claim seeking declaratory judgment that the surface use agreement signed by Mary Ellen was invalid as to his property because he did not sign it. Appellant's argument is that "the Surface Use Agreement is invalid and did not provide Defendants the consent needed for Defendants' off-Leased-Premises project." Again, we

9

have already determined that the production sharing agreement grants appellees the easement for the project and obviates the need for further consent. As such, we need not reach the merits of appellant's argument as to the validity of the surface use agreement. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). The trial court did not err in entering a take-nothing judgment on appellant's declaratory judgment claim.

We overrule appellant's first issue.

### III.     BURLINGTON'S COUNTERCLAIM

In his second issue, appellant argues that the trial court erred in granting, without prejudice, Burlington's nonsuit of its wrongful injunction counterclaim. Appellant asserts that Burlington waived its counterclaim under Texas Rule of Civil Procedure 279 because it "failed to prove or submit jury questions on its counterclaims at trial," and therefore, dismissal should have been with prejudice. In response, appellees argue that a wrongful injunction claim can be brought in a subsequently filed lawsuit and need not be brought in the same lawsuit as the injunction itself. We agree with appellant.

While we do not dispute appellees' assertion that a wrongful injunction claim could be filed either as a counterclaim or a separate suit, *see Sweezy Constr., Inc. v. Murray*, 915 S.W.2d 527, 531 (Tex. App.—Corpus Christi–Edinburg 1995, no writ), here, appellees specifically filed their claim as a counterclaim within the pending lawsuit. The counterclaim was never severed prior to trial, nor was there any request to do so. Appellees presented no direct evidence or testimony at trial regarding their counterclaim,

10

nor did they attempt to establish the damages element of a wrongful injunction claim. *See Energy Transfer Fuel, L.P. v. Bryan*, 322 S.W.3d 409, 414 (Tex. App.—Tyler 2010, no pet.) (stating that under either theory of wrongful inunction, a claimant must prove that issuance of the injunction resulted in damages). Additionally, appellees did not request any jury charge question related to their counterclaim. As such, we find that appellees waived their counterclaim for wrongful injunction and the trial court erred in granting the nonsuit without prejudice. *See* TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."). We sustain appellant's second issue.

## IV.    CONCLUSION

We affirm the trial court's order entering a take-nothing judgment for appellant on his claims for declaratory judgment, breach of contract, and trespass. We reverse the trial court's order granting appellees' nonsuit without prejudice on appellees' wrongful injunction claim and render judgment that appellees take nothing on said claim.

NORA L. LONGORIA
Justice

Delivered and filed on the
8th day of February, 2024.

11